UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANDRE DASH,

                              Plaintiff,

        – against –

THE BOARD OF EDUCATION OF THE
CITY SCHOOL DISTRICT OF NEW YORK,

                              Defendant.

**ORDER**
15-CV-2013

## Table of Contents

I.      **Introduction** ........................................................................................................... **1**

II.     **Facts** ........................................................................................................................ **1**

III.    **Procedural History** ................................................................................................ **5**

IV.     **Law** .......................................................................................................................... **6**

   A.   **Standard of Review** ............................................................................................ **6**

   B.   **Statute of Limitations** ........................................................................................ **7**

   C.   **Doctrine of Waiver and Release** ........................................................................ **9**

   D.   **Hostile Work Environment** .............................................................................. **10**

V.      **Application of Law to Facts** ................................................................................ **13**

   A.   **Statute Of Limitations** ...................................................................................... **13**

   B.   **Doctrine of Waiver and Release** ...................................................................... **16**

   C.   **Hostile Work Environment** .............................................................................. **19**

VI.     **Trial** ...................................................................................................................... **25**

VII.    **Conclusion** ............................................................................................................ **26**

**JACK B. WEINSTEIN, Senior United States District Judge**:

## I. Introduction

A female principal ("Principal") allegedly created a licentious aura in a public school, resulting in harm to plaintiff, then an assistant principal. He is an African American male formerly employed by the Board of Education of the City School District of New York ("BOE"). He brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). *See* Corrected Verified Compl. with Jury Demand, Feb. 18, 2016, ECF No. 20 ("Am. Compl."). He alleges that that he was subjected to disparate treatment; suffered a hostile, sexually charged work environment based upon his race and gender; and was punished in retaliation for complaining. *Id.*

Defendant moves for summary judgment on all claims. The motion is granted in part. Only the charge of a hostile work environment will be tried. A jury can evaluate the evidence in the context of current community standards of appropriate working relationships. *See Hamling v. United States*, 418 U.S. 87, 104–05 (1974) ("A juror is entitled to draw on his own knowledge of the views of the average person in the community or vicinage from which he comes for making the required determination, just as he is entitled to draw on his knowledge of the propensities of a 'reasonable' person in other areas of the law." (internal citations omitted)); *Roberts v. United Parcel Serv., Inc.*, 115 F. Supp. 3d 344, 370 (E.D.N.Y. 2015) (explaining that a "jury is generally best suited to evaluate" discrimination charges in light of current community standards).

## II. Facts

Plaintiff began working for the BOE in 1988. Am. Compl. at ¶ 8. He was employed as a travel trainer and as a teacher. *Id.* In 2008, he was an assistant principal at PS 370K (the "school"). He was the only African-American male administrator at the school. *Id.* at ¶ 9.

Between 2008 and 2013, plaintiff was allegedly subjected to an intentional and continuous pattern of discrimination based on his race and gender that created a hostile work environment. *Id.* at ¶ 10. Specifically, plaintiff alleges that the Principal, to whom he directly reported, subjected him to discriminatory treatment and created a prurient hostile work environment. *Id.* He makes the following allegations:

- In September 2009, when he was in the Principal's office for a meeting, she described to him "her sexual activities for the weekend with two different men." *Id.* at ¶ 10.10.

- Throughout 2010, 2011, and 2012, she discussed with him her sexual encounters with men in explicit details. *Id.* at ¶ 10.13.

- She discussed the book "Fifty Shades of Grey," a sexually charged novel, with her colleagues in his presence. *Id.* at ¶ 10.14.

- During several administrative meetings at which he was present, she passed around pictures stored on her cell phone that depicted male genitalia. *Id.*

- On several occasions, she walked near him with her pants open. *Id.*

- On one occasion, she "rubb[ed] her vagina," and when he inquired "if she was ok[,] [she] stated, 'Uh huh. I have my period.'" *Id.*

- She lifted her shirt to reveal to him tattoos and a piercing. *Id.*

- In January 2011, he sought to report an unseemly incident to the Principal. *Id.* at ¶ 10.15. A paraprofessional, using profanities and obscene gestures, had engaged in an argument with a male student. *Id.* When plaintiff entered the classroom to intervene, the paraprofessional "placed her legs two steps behind her to simulate a

sexual act and stated 'Mr. Dash is probably fucking you'" to the student. *Id.*
When he reported this incident to the Principal, she refused to take action. *Id.*

- In May 2012, he reported another inappropriate action to the Principal. *Id.* at ¶¶ 10.16-10.17. A school employee was acting improperly towards several students; he threatened one, and when the student responded, the employee replied, "What you gonna do? [C]all your daddy [plaintiff]? . . . Bitches call men Daddy who aren't their real dad[ ], he is probably fucking you." The employee repeated this statement to another student in September 2012, again insinuating that plaintiff was engaging in sexual relations with his students. *Id.* Plaintiff attempted to report this behavior to the Regional Safety Administrator and to the Principal, but she refused to take action and, instead, berated him for informing the Regional Safety Administrator. *Id.*

- In April 2013, he was engaging the Principal in a conversation about bullying and fighting among the students and how he planned to handle the behavior. The Principal responded, "A man is only good for a hard Dick!" *Id.* at ¶ 10.19.

- The Principal refused to give him paperwork necessary to receive a payment for his extra services, and as a result, he was not compensated. *Id.* at ¶ 10.22.

- The Principal consistently treated him differently than other assistant principals and other members of the staff. She never addressed him by his first name, but called other teachers by their first names. *Id.* at ¶¶ 10.17, 10.29. She often refused to speak to him or engage with him. *Id.* at ¶¶ 10.15-10.21. She assigned support staff to the other two assistant principals, leaving him as the only assistant principal without such assistance. *Id.* at ¶ 10.23. Unlike plaintiff, the other

assistant principals were allowed to leave school grounds without having their time deducted. *Id.* at ¶ 10.26. Plaintiff was frequently excluded from meetings or professional development opportunities within the school, and was required to work longer hours than the other assistant principals. *Id.* at ¶¶ 10.30-10.34, 10.40. The other two assistant principals were non-African American females. *Id.* at ¶¶ 10.34-10.36.

Defendant argues that it did not have any concerns about plaintiff's employment until May 10, 2013, when plaintiff was informed that a student had brought a razor blade into the school. Def.'s Local Rule 56.1 Statement of Undisputed Material Fact, Nov. 7, 2016, ECF No. 36 ("Def.'s Rule 56.1 Statement"), at ¶¶ 5-6. Plaintiff failed to report this to the Principal, despite being required to do so under the Chancellor's Regulations governing the New York City Department of Education's ("DOE") policies. *Id.* On May 13, the same student again brought a razor blade to school, and cut another student and a dean during a fight. *Id.* at ¶ 7.

Because plaintiff failed to report the incident, the Principal called the Special Commissioner of Investigation for the New York City School District ("SCI") to report plaintiff. *Id.* at ¶ 8. Decl. of Assistant Corporation Counsel Mario G. Frangiose to Def.'s Mot. for Summ. J. ("Frangiose Decl.") at Ex. F, Nov. 7, 2016, ECF No. 37-9. The SCI complaint was forwarded to the Office of Special Investigations ("OSI") for investigation. Def.'s Rule 56.1 Statement at ¶ 9; Frangiose Decl. at Ex. I, Nov. 7, 2016, ECF No. 37-6.

Beginning on May 13, 2013, plaintiff was reassigned from PS 370 to an off-site location, where he continued receiving full pay and benefits. Def.'s Rule 56.1 Statement at ¶ 10. Following an investigation, the OSI substantiated the charges against plaintiff. *Id.* at ¶ 11. It was determined that plaintiff had been "made aware that [the student] was in possession of a

razor blade, which is clearly an immediate safety emergency. AP Dash failed to make the proper notifications, which resulted in [the student] returning to school on Monday, May 13, 2013, again in possession of a razor blade, and assaulting another student and a staff member."
Frangiose Decl. at Ex. G, Nov. 7, 2016, ECF No. 37-7.

Failure of plaintiff to report was deemed a violation of Chancellor's Regulation A-412. *Id.* Following a meeting with plaintiff and his union representative and a review of the OSI report, the superintendent concluded that plaintiff would remain assigned to the off-site location pending the outcome of further disciplinary action. Def.'s Rule 56.1 Statement at ¶¶ 15-16; Frangiose Decl. at Ex. L, Nov. 7, 2016, ECF No. 37-12.

In December 2013, the DOE filed charges against plaintiff pursuant to Education Law § 3020-a for engaging in misconduct, neglect of duty, and conduct unbecoming to his position. Frangiose Decl. at Ex. M, Nov. 7, 2016, ECF No. 37-13; Def.'s Rule 56.1 Statement at ¶ 18. Plaintiff and the DOE settled these charges in February, 2015; plaintiff agreed to retire. Def.'s Rule 56.1 Statement at ¶ 25; Frangiose Decl. at Ex. O, Nov. 7, 2016, ECF No. 37-15. The parties waived their right to initiate legal proceedings relating to or arising out of the settlement. Frangiose Decl. at Ex. O, Nov. 7, 2016, ECF No. 37-15.

## III. Procedural History

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on December 10, 2013, asserting that defendant had "violated Title VII by discriminating against [him] due to his race, gender and retaliation (disparate treatment and a hostile work environment)." Frangiose Decl. at Ex. P, Nov. 7, 2016, ECF No. 37-16. He received a right to sue letter on December 17, 2014. Frangiose Decl. at Ex. R, Nov. 7, 2016, ECF No. 37-18.

On February 27, 2015, plaintiff filed the instant action in New York State Supreme Court, Kings County. It was removed to this court in April 2015.

Plaintiff withdrew his claims pursuant to the New York City Human Rights Law and his retaliation claims pursuant to Title VII. *See* Stipulation of Discontinuance, July 14, 2015, ECF No. 9. He also waived his claim that he endured disparate treatment based on his race and his gender, in violation of Title VII. *See* Hr'g Tr., Feb. 23, 2017 ("Hr'g Tr."), at 36:23-37:7. Remaining is plaintiff's claim that he was subjected to a hostile work environment in violation of Title VII. *Id.*; *see* Am. Compl. at ¶ 15.

In November 2016, defendant filed a motion for summary judgment, on the grounds that: (1) the instant action is barred in its entirety by the doctrine of waiver and release; (2) all claims that accrued prior to February 13, 2013 are time-barred; and (3) plaintiff is unable to demonstrate that he was subjected to a hostile work environment. Mem. of Law in Supp. of Def's. Mot. for Summ. J., Nov. 7, 2016, ECF No. 38 ("Def's. Summ. J. Mot.").

## IV. Law

### A. Standard of Review

Summary judgment is appropriate when the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party, resolving all ambiguities and drawing all reasonable inferences against the movant." *Hernandez v. Int'l Shoppes, LLC*, 100 F. Supp. 3d 232, 247 (E.D.N.Y. 2015), *appeal dismissed* (June 18, 2015). The substantive law governing the case will identify those facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

No genuinely triable factual issue exists "if, on the basis of all the pleadings, affidavits and other papers on file, and after drawing all inferences and resolving all ambiguities in favor of

the non-movant, it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996). If the movant meets this burden, the non-moving party must provide "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotation marks and citation omitted).

## B. Statute of Limitations

Under Title VII of the Civil Rights Act of 1964, a plaintiff "shall" file an employment discrimination charge with the EEOC within 180 days or 300 days after an "alleged unlawful employment practice occurred," the time limit being dependent on whether plaintiff initially filed a proceeding with a local or state agency that enforces a law that prohibits discrimination on the same basis as plaintiff alleges under federal law. 42 U.S.C. § 2000e–5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002). "Title 42 U.S.C. § 2000e–5(e)(1) is a charge filing provision that specifies with precision the prerequisites that a plaintiff must satisfy before filing suit . . . A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." *Morgan*, 536 U.S. at 109-10 (internal quotation marks and citation omitted). For the purposes of the statute, "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *Id.* at 110.

"'[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.'" *Francis v. City of N.Y.,* 235 F.3d 763, 767 (2d Cir. 2000) (quoting *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982)); *see also Riddle v. Citigroup*, 449 F. App'x 66, 69 (2d Cir. 2011) ("As a predicate to filing suit under [Title VII], a private plaintiff must first file a timely charge with the EEOC."); *Kubicek v. Westchester Cnty.,*

No. 08-CV-0372, 2009 WL 3720155, at *4 (S.D.N.Y. Oct.8, 2009) ("The filing deadlines for a charge of discrimination act as a 'statute of limitations' and a failure to timely file a charge acts as a bar to a plaintiff's action." (citation omitted)).

An exception to the timely filing requirement is the continuing violations doctrine. "[W]hen a plaintiff experiences a 'continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Dimitracopoulos v. City of N.Y.*, 26 F. Supp. 3d 200, 211 (E.D.N.Y. 2014) (quoting *Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992)).

The continuing violation exception does not apply to "discrete" discriminatory acts, such as "termination, failure to promote, denial of transfer, or refusal to hire," even where those incidents were related to actionable ones. *Morgan*, 536 U.S. at 113-114. "Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within the appropriate time period." *Id.* at 122. "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.* at 113.

The doctrine is available in harassment claims under a hostile work environment theory, because "[t]he 'unlawful employment practice' . . . cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 233 (E.D.N.Y. 2012) (quoting *Morgan*, 536 U.S. at 115), *aff'd*, 713 F.3d 163 (2d Cir. 2013); *see also McGullam v. Cedar Graphics, Inc*., 609 F.3d 70, 75 (2d Cir. 2010) (since hostile work environment claims occur "over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own," the court may

consider "the entire scope of a hostile work environment claim, including behavior alleged *outside* the statutory time period" (emphasis added) (quoting *Morgan*, 536 U.S. at 105 (2002))).

### C. Doctrine of Waiver and Release

"It is well established that settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002) (internal quotation marks and citation omitted). "A valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between parties." *See A.A. Truck Renting Corp. v. Navistar, Inc.*, 916 N.Y.S.2d 194, 194 (N.Y. App. Div. 2011) (internal quotation marks and citations omitted); *see also Dechberry v. New York City Fire Dep't*, 124 F. Supp. 3d 131, 141-142 (E.D.N.Y. 2015).

An employee can waive his or her right to initiate a federal or state discrimination charge against an employer, so long as that waiver is "done knowingly and voluntarily. *Neal v. JPMorgan Chase Bank, N.A.*, No. 10-CV-1157, 2012 WL 3249477, at *8 (E.D.N.Y. Aug. 8, 2012) (internal quotation marks and citation omitted). Whether the waiver was entered knowingly and voluntarily is determined by examining the totality of the circumstances, taking into account the following factors:

> (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, and (6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law.

*Id.* at *9 (quoting *Bormann v. AT & T Commc'ns, Inc.*, 875 F.2d 399, 403 (2d Cir. 1989). These "factors are not exhaustive and not every factor must be in defendant's favor for the release to be

found knowing and voluntary; rather, all of the factors must be examined under the totality of the circumstances." *Neal*, 2012 WL 3249477, at *9.

### D. Hostile Work Environment

To state an actionable hostile work environment claim, plaintiff must establish: (1) that "the harassment was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment;" and (2) "a specific basis . . . for imputing the conduct that created the hostile environment to the employer." *Dillon v. Ned Mgmt.*, 85 F. Supp. 3d 639, 655 (E.D.N.Y. 2015) (internal quotation marks omitted) (quoting *Perry v. Ethan Allen, Inc*., 115 F.3d 143, 149 (2d Cir. 1997)).

#### 1.    Severe or Pervasive

Under the first element, plaintiff "must establish that the harassing conduct was severe *or* pervasive – not severe *and* pervasive. . . . The standard is disjunctive." *Dillon v. Ned Mgmt., Inc.*, 85 F. Supp. 3d 639, 655 (E.D.N.Y. 2015) (internal quotation marks and citations omitted). "To withstand summary judgment, a plaintiff must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000) (internal quotation marks and citation omitted).

The conduct must be both one that a "reasonable person would find hostile or abusive [objective], and one that the victim in fact did perceive to be [subjective]." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (discussing the objective and subjective components of a hostile work environment claim).

"[T]here is neither a threshold magic number of harassing incidents that gives rise, without more, to liability as a matter of law, nor a number of incidents below which a plaintiff

fails as a matter of law to state a claim." *Howley v. Town of Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (internal quotation marks and citation omitted) (finding that a single incident of verbal abuse was sufficient to survive a hostile work environment claim at summary judgment). "The objective hostility of a work environment depends on the totality of the circumstances," viewed from the perspective "of a reasonable person in the plaintiff's position, considering all the circumstances [including] the social context in which particular behavior occurs and is experienced by its target." *Petrosino v. Bell Atl.*, 385 F.3d 210, 221 (2d Cir. 2004) (alteration in original) (internal quotation marks and citation omitted) (denying summary judgment where "persistent sexually offensive remarks . . . were particularly insulting to [a protected class] because these actions cast [members of that protected class] in a demeaning role.").

### 2.      Specific Basis and Imputing Conduct On The Employer

To satisfy the second element, plaintiff must establish "a specific basis . . . for imputing the conduct that created the hostile environment to the employer." *Dillon*, 85 F. Supp. 3d at 655 (internal quotation marks and citations omitted).

"[I]t is axiomatic that in order to establish a sex-based hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks and citation omitted). The same applies to racial discrimination; plaintiff must show that race was a specific basis for the conduct complained of. *Id.*

The status of the harasser is central to the inquiry of whether the conduct can be imputed to the employer. *Dillon*, 85 F. Supp. 3d 639. An employer is subject to vicarious liability under Title VII when a supervisor "with immediate (or successively higher) authority" creates an actionable hostile work environment. *Faragher*, 524 U.S. at 807; *Burlington Indus., Inc. v.*

*Ellerth*, 524 U.S. 742, 745 (1998). An employee is a "supervisor" if he is empowered "to take tangible employment actions against the victim, *i.e.*, to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2443 (2013) (internal quotation marks and citation omitted) (finding juries should be instructed with respect to the required nature and degree of authority wielded by the harasser).

"[W]hen the hostile environment is created by a coworker or by a low-level supervisor who does not rely on his supervisory authority in carrying out the harassment, the employer is liable only if it has either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Perry*, 115 F.3d at 153 (internal quotation marks and citations omitted).

### 3. Faragher/Ellerth Defense

An affirmative defense to imputing the conduct that created a hostile work environment to the employer is the *Faragher/Ellerth* defense. To establish it, defendant must show by a preponderance of the evidence (1) "that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and (2) "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765; *see also Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 183 (2d Cir. 2012).

With respect to the first prong, the existence of an anti-harassment policy and accompanying complaint procedures are important considerations. *See Faragher*, 524 U.S. at 807. "[It is well-established that when an employer has a procedure for reporting harassment and

discrimination, a plaintiff must make use of that process and report the alleged harassment or discrimination to the employer before the employer can be expected to deal with the conduct." *France v. Touro Coll.*, No. 14-CV-4613, 2016 WL 1105400, at *12 (E.D.N.Y. Feb. 16, 2016), *report and recommendation adopted sub nom. Ueth France v. Touro Coll.*, No. 14-CV-4613, 2016 WL 1117459 (E.D.N.Y. Mar. 21, 2016).

With respect to the second prong, a plaintiff's failure to report is not considered unreasonable if that failure can be attributed to the conduct of the employer. *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 64 (2d Cir. 1998) ("While the fact that a complaint was unreported may be relevant in considering whether an employer had knowledge of the alleged conduct, an employer is not necessarily insulated from Title VII liability simply because a plaintiff does not invoke her employer's internal grievance procedure if the failure to report is attributable to the conduct of the employer or its agent."). Nor is a plaintiff required to exhaust every possible complaint procedure in order to preserve his right under Title VII. *Gorzynski*, 596 F.3d at 105 ("There is no requirement that a plaintiff exhaust all possible avenues made available where circumstances warrant the belief that some or all of those avenues would be ineffective or antagonistic.").

## V. Application of Law to Facts

### A. Statute Of Limitations

Defendant argues that the hostile work environment claim for discrimination based on his gender and race under Title VII must be dismissed because plaintiff failed to file a timely charge with the EEOC. *See generally* Def.'s Summ. J. Mot.

Both the New York State Division of Human Rights ("NYSDHR") and the New York City Commission on Human Rights enforce laws that prohibit discrimination on the same basis as is alleged in the instant matter under federal law. *See* N.Y. Executive Law §§ 290, *et seq.*;

N.Y.C. Admin. Code §§ 8-101, *et seq.* Under a worksharing agreement between the NYSDHR and the EEOC, "any charge received by the EEOC will be sent and deferred to the NYSDHR to comply with Title VII's [statute of limitations requirements]." *Humphrey v. Council of Jewish Federations*, 901 F. Supp. 703, 708 (S.D.N.Y. 1995). The 300-day limit to filing a timely charge with the EEOC applies in the instant case.

Plaintiff filed with the EEOC a charge of hostile work environment and disparate treatment on the basis of his gender and race in violation of Title VII on December 10, 2013. Frangiose Decl. at Ex. P, Nov. 7, 2016, ECF No. 37-16. He complained of the same actions that form the basis of the instant suit. *Id.* Under the 300-day statute of limitations, plaintiff cannot proceed on any claims that occurred prior to February 13, 2013, unless the violation was continuous. *Dimitracopoulos*, 26 F. Supp. 3d at 212.

To qualify as continuing, the claimed actions must not be "discrete acts," but "repeated conduct" that "occurs over a series of days or perhaps years." *Morgan*, 536 U.S. at 115. Plaintiff alleges he was subjected to hostile work environment "on an ongoing continuous basis" between 2008 and 2013. Am. Compl. at ¶ 8. He points to multiple discriminatory, inappropriate, or sexually explicit remarks the Principal and other staff members made towards him over the course of his employment. *See, e.g.*, Am. Compl. at ¶ 10.10 (in September 2009, when plaintiff was in the Principal's office for a meeting, she shared with plaintiff "her sexual activities for the weekend with two different men."); *id.* at ¶ 10.13 (throughout 2010, 2011, and 2012, the Principal discussed with plaintiff her sexual encounters with men in explicit details); *id.* at ¶ 10.14 (the Principal discussed the book "Fifty Shades of Grey" with her colleagues, and during several administrative meetings, she passed around pictures stored on her cell phone that depicted male genitalia); *id. (*on several occasions, the Principal walked around plaintiff, the

only male administrator, with her pants open); *id.* (on one occasion, the Principal "rubb[ed] her vagina" while speaking with plaintiff); *id.* (on one occasion, the Principal lifted her shirt to reveal tattoos and a piercing to plaintiff); *id.* at ¶ 10.15 (in January 2011, the Principal failed to investigate when a paraprofessional simulated a sexual act and stated "Mr. Dash is probably fucking [a student]"); *id.* at ¶ 10.16 (in May and September 2012, the Principal twice failed to investigate when a school employee implied to students that Mr. Dash "is probably fucking" them); *id.* at ¶ 10.19 (in April 2013, the Principal stated to plaintiff that "[a] man is only good for a hard Dick!"). It is not clear whether these incidents, if they occurred, were directed at plaintiff or were part of a generally crude atmosphere. If the former, they would be highly significant.

Plaintiff also pleads that throughout his employment as assistant principal, he was treated differently than the two other assistant principals, who were non-African American women. *Id.* at ¶¶ 10.17, 10.29 (the Principal never addressed plaintiff by his first name, but called other teachers by their first names); *id.* at ¶¶ 10.14-10.22 (the Principal often refused to speak to plaintiff or engage with him); *id.* at ¶ 10.23 (the Principal assigned the other two assistant principals support staff, leaving plaintiff as the only assistant principal without support staff); *id.* at ¶ 10.26 (unlike plaintiff, the other assistant principals were allowed to leave school grounds without having their time deducted accordingly); *id.* at ¶¶ 10.30-10.34, 10.40 (plaintiff was frequently excluded from meetings or professional development opportunities within the school, and was required to work longer hours than the other assistant principals).

Plaintiff contends that these consistent discriminatory actions resulted in his placement at an off-site location in May 2013 and disciplinary proceedings under Education Law 3020-a in December 2013. Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J., Dec. 30, 2016, ECF No. 43 ("Pl.'s Opp'n Mem.), at 16.

Construing the record in the light most favorable to the plaintiff, these alleged acts could be considered part of a single, continuing policy of discrimination against plaintiff, protected under the continuing violation exception to the Title VII limitations period. *Sotomayor*, 862 F. Supp. 2d at 250. In the instant case, the "specific and related instances of discrimination [were] permitted by the employer to continue unremedied for so long" that they may aggregate into "a discriminatory policy or practice." *Fitzgerald v. Henderson,* 251 F.3d 345, 359 (2d Cir. 2009) (internal citations and quotations omitted). "The discriminatory conduct is sufficiently similar to be considered part of a single policy." *Sotomayor*, 862 F. Supp. 2d at 251. *See also Hussain v. Long Island R. Co.*, No. 00-CV-4207, 2002 WL 31108195, at *5 (S.D.N.Y. Sept. 20, 2002) (holding the continuing violation exception was applicable to discriminatory harassment plaintiff experienced over three years, when plaintiff testified that the harassment was "continuing," and "a regular thing"). Because some of the events plaintiff pleads – such as the instance in which the Principal allegedly told him that "[a] man is only good for a hard Dick!" – took place after February 2013 and are part of a continuing violation, plaintiff may proceed with a hostile work environment claim, regardless of whether the acts complained of occurred before or after February 13, 2013.

**B. Doctrine of Waiver and Release**

Defendant argues that plaintiff's complaint, as it relates to defendant's decision to investigate plaintiff for failing to report a student's possession of a razor blade, must be dismissed because plaintiff waived these claims when the parties settled the disciplinary action brought against plaintiff under Education Law 3020-a. Def.'s Summ. J. Mot. at 2.

Following a report from the OSI concluding that plaintiff had failed to report a student's possession of a razor blade to the Principal, as is required by the Chancellor's Regulations,

defendant filed charges against plaintiff on December 10, 2013 pursuant to Education Law §

3020-a for engaging in misconduct, neglect of duty, and conduct unbecoming to his position.

Frangiose Decl. at Ex. M, Nov. 7, 2016, ECF No. 37-13. Plaintiff and the DOE discontinued the

hearing and settled these charges on February 13, 2015. Frangiose Decl. at Ex. O, Nov. 7, 2016,

ECF No. 37-15. The parties agreed under the settlement to waive their right to initiate legal

proceedings "relating to or arising out of" the settlement. *Id.* The settlement states in relevant

part:

> The parties to this Stipulation knowingly waive their right to make any legal or
> equitable claims, or to initiate legal and/or administrative proceedings of any kind
> against each or any agent thereof, *relating to or arising out of the terms of this
> Stipulation*, including allegations of age discrimination, except to enforce this
> Stipulation of Settlement now or in the future.

*Id.* at ¶ 6 (emphasis added).

The disciplinary charges related only to plaintiff's failure to report a student's possession

of a razor blade on May 10, 2013, and the assault committed by that student on May 13, 2013.

Miller Decl. at Ex. N, ECF No. 37. Neither the charges nor the settlement related to the

discriminatory remarks and conduct suffered between 2008 and 2013. *Id.*

"Courts in this Circuit have consistently barred claims where a plaintiff enters into a

settlement, executes a general release, and then brings an additional lawsuit alleging similar

claims that could have been alleged in the prior settled action." *Dechberry v. New York City Fire

Dep't*, 124 F. Supp. 3d 131, 142 (E.D.N.Y. 2015); *see also Tromp v. City of New York*, 465 Fed.

App'x 50, 52 (2d Cir. 2012) ("Words of general release are clearly operative not only as to all

controversies and causes of action between the releasor and releasees which had, by that time,

actually ripened into litigation, but to all such issues which might then have been adjudicated as

a result of pre-existent controversies." (quoting *A.A. Truck Renting Corp. v. Navistar, Inc.*, 916 N.Y.S.2d 194, 196 (N.Y. App. Div. 2011) (internal citation omitted)).

The language of the stipulation in the instant case does not provide a general release of all legal claims: it does not expressly state that the agreement constitutes a waiver of the right to file *any* legal claim against the employer. *Compare Pampillonia v. RJR Nabisco. Inc.*, 138 F.3d 459, 462 (2d Cir. 1998) (upholding the plaintiff's general release of the employer "from *all claims* or action arising from *or in any way related* to [the] employment or termination of [the] employment" (emphasis added)); *Tromp*, 465 Fed. App'x at 52 (upholding plaintiff's general release to discharge the defendants "*from any and all* claims which were or could have been alleged) (emphasis added); *Castro v. City of New York*, 11-CV-5379, 2012 WL 5289490, at *2 (E.D.N.Y. June 26, 2012) (upholding a general release of "*any and all claims* which were or could have been alleged" (emphasis added)); *Lewis v. City of New York*, No. 11-CV-3266, 2011 WL 3273939, at *2 (E.D.N.Y. July 28, 2011) (upholding plaintiff's release of defendants "*from any and all* liability, claims, or rights of action that have or *could have been* alleged by plaintiff in the prior action" and barring subsequent litigation of supplemental claims that arose prior to settlement (emphasis added)).

The settlement in the instant case unambiguously refers to the waiver of legal claims "relating to or arising out of the terms of" the "charges that were preferred on or about December 10, 2013," and the agreement for plaintiff to "irrevocably retire" and for defendant to "discontinue the disciplinary charges." Frangiose Decl. at Ex. O, Nov. 7, 2016, ECF No. 37-15. The instant Title VII discrimination action does not "relat[e] to or aris[e] out of the terms" of that settlement, which concerns charges against the plaintiff for reporting insufficiencies. *Id.* Defendant may not claim the complaint is barred by the doctrine of waiver and release. "In the

absence of a clear right or obligation set forth in the language of a contract - and a settlement agreement is a contract - a court should not lightly find an implied right or obligation." *America v. Mills*, 654 F. Supp. 2d 28, 33 (D.D.C. 2009) (footnote omitted).

## C. Hostile Work Environment

Because plaintiff's hostile work environment claim is treated as a continuing violation, the court will consider all of the incidents plaintiff relies upon, including those that occurred prior to February 13, 2013. *See supra,* section V.A.

### 1. Severe or Pervasive

Plaintiff's claim of a hostile work environment rests primarily on two broad categories of conduct: (1) inappropriate remarks that were left unaddressed by plaintiff's supervisor, and (2) discriminatory treatment with respect to meetings, professional advancement opportunities, and working conditions within the school.

The derogatory statements plaintiff recalls are both "severe" *and* "pervasive." *Dillon*, 85 F. Supp. 3d at 655. Viewing the record in a light most favorable to plaintiff, under the totality of the circumstances, plaintiff has satisfied this prong of the inquiry for the purposes of summary judgment.

A reasonable person would likely find it "hostile or abusive" if his co-workers repeatedly implied that he was engaging in inappropriate sexual relations with his students. *Faragher*, 524 U.S. at 787 (discussing the objective and subjective components of a hostile work environment claim). It is also, almost *a fortiori*, extraordinarily severe for the principal of a school to refuse to act on an assistant principal's report of such accusations. Explicit accusations of sexual misconduct on the part of an educator towards a person she is supervising must be taken seriously and investigated promptly. Even a single accusation can reasonably be viewed as

having intolerably altered plaintiff's work environment, because it is deleterious to a school's environment when students are led to believe that a staff member is abusing his students. *Howley*, 217 F.3d at 154 (finding that a single incident of verbal abuse was sufficient to raise questions of fact warranting reversal of grant of summary judgment on hostile work environment claim).

The Principal's alleged comments and sexually explicit behavior towards plaintiff contributes to the pervasiveness of the conduct. She allegedly responded with an explicit statement when plaintiff attempted to engage her in a discussion about bullying among students, implying that a man was not capable of the task. Am. Compl. at ¶ 10.19. She allegedly walked around with her pants open in plaintiff's presence on multiple occasions, discussed with plaintiff her sexual encounters, showed sexually explicit images on her cell phone during a meeting he attended, and made several inappropriate gestures in plaintiff's presence. *Id.* at ¶¶ 10.13-10.15. The number of incidents alone is not determinative; it is the totality of the circumstances, the severity of the conduct, and the effects the conduct had on plaintiff that count. *Howley*, 217 F.3d at 154; *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). In the instant matter, plaintiff was allegedly subjected to sexually explicit and accusatory comments repeatedly in a public setting, and many of the comments were specifically tied to his ability perform his job as a teacher.

The court cannot determine whether the Principal's alleged attempts to exclude plaintiff from professional development opportunities and refuse to afford him the same benefits as other assistant principals contributed to the hostile work environment, because plaintiff has not pled these allegations with specificity. Evidence of them will be before the jury to provide context for the specific events charged.

### 2. Imputing Conduct to the Employer

Plaintiff has also established a specific basis – his gender and race – for imputing the conduct that created a hostile work environment to his employer. He alleges that the Principal repeatedly discussed with him her sexual encounters, made sexually explicit remarks to him, made physical and verbal advancements towards him, and refused to discipline school staff who accused him of having sexual relations with his students. *See generally* Am. Compl. at ¶¶ 10.10-10.17. On one occasion, he was allegedly waiting outside of the Principal's office for a meeting, when another school staff member commented to the Principal that she "might as well tell [plaintiff] [that the Principal is] a slut." *Id.* at ¶ 10.10. These incidents, if true, relate to plaintiff's gender; he was the sole male assistant principal and the Principal was his female supervisor.

As the court noted at the summary judgment hearing, these incidents could also have occurred because of plaintiff's race. Hr'g Tr. at 20:5-22:17 ("[I]f [the word 'slut'] is particularly directed to the plaintiff because of his race or gender or both, then we have . . . a serious charge under the statute. . . . [These claims] also relate to race . . . we have to face up to the fact that there are attitudes with respect to sexuality based on race in the United States, they go back to slavery times and they're weighty problems that we're facing."). Plaintiff stated in his deposition testimony that the Principal once called him "an uppity nigger"; if true, this slur further establishes a link between plaintiff's hostile work environment claim and his race. Frangiose Decl. at Ex. J, Nov. 7, 2016, ECF No. 37-10, at 218:9-11.

The distinction "between incidents having an overtly sexual tone . . . and personnel decisions that lack earmarks of bias" is "often dim." *Alfano*, 294 F.3d at 377. Plaintiff's complaint is somewhat "sketchy" and "not . . . precisely drafted." Hr'g Tr. at 13:9-15. But he has sufficiently shown during discovery and in the testimony at the summary judgment hearing

that the employer's conduct was likely to have been motivated by gender or racial bias – or at least a juror could so conclude. *Alfano*, 294 F.3d at 377 ("In a hostile work environment case, it may well be a proper exercise of the district court's broad discretion to allow the plaintiff to build [his] case partly by adducing incidents for which the link to any discriminatory motive may, in the first instance, appear tenuous or nonexistent. The plaintiff must, however, establish at trial that incidents apparently [ ]neutral were in fact motivated by bias.").

Plaintiff can impute the harasser's conduct to his employer, because the Principal had "immediate (or successively higher) authority" over plaintiff. *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 745. As an assistant principal, he reported directly to her. Am. Compl. at ¶¶ 10.9-10.10. She had the ability to discipline him and influence his working conditions, and she was the person who hired him as an assistant principal. *Id.* at ¶ 10.9; Hr'g Tr. at 16:7-19; *see Vance*, 133 S. Ct. at 2443. The Principal was plaintiff's supervisor, and her actions – or failure to act following plaintiff's complaints to her – can be imputed to defendant. *Gorzynski*, 596 F.3d at 103 ("When, as here, the alleged harasser is in a supervisory position over the plaintiff, the objectionable conduct is automatically imputed to the employer.").

The insinuations of sexual misconduct made by fellow staff members – not supervisors – about plaintiff could also be imputed to defendant. Plaintiff apparently tried on a number of occasions to report to the Principal inappropriate remarks made by other school employees; she allegedly did not act on his complaints. Am. Compl. at ¶¶ 10.15-10.17. He also reported one of the remarks of a school employee to the Regional Safety Administrator, and the Principal chastised plaintiff for doing so. *Id.* Plaintiff has raised a serious question of fact about whether defendant "knew of the harassment but did nothing about it." *Murray v. N.Y. Univ. Coll. of*

*Dentistry*, 57 F.3d 243, 249 (2d Cir. 1995) (internal quotation marks and citations omitted); *see also Perry*, 115 F.3d at 153. These contentions and counterclaims will be before the jury.

### 3.     **Faragher/Ellerth Defense**

Defendant argues that it can avail itself of the *Faragher/Ellerth* defense because plaintiff failed to take advantage of preventive complaint mechanisms available to him prior to filing the instant matter. *See* Def.'s Summ. J. Mot.

There exist questions of fact as to whether (1) defendant exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (2) plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise. *Faragher*, 524 U.S. at 807; *Ellerth*, 524 U.S. at 765; *see also Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 183 (2d Cir. 2012) (finding disputed issues of fact regarding the availability of the *Faragher/Ellerth* defense precluded summary judgment).

As discussed above, in section V.C.2, plaintiff allegedly attempted to report sexually harassing behavior exhibited by other staff members to the Principal, a supervisor, and to the Regional Safety Administrator, who, as far as the record reflects, did not take any appropriate remedial steps. Am. Compl. at ¶¶ 10.15-10.17. The jury could find that this failure to intervene to end an inappropriate and insulting atmosphere was harmful to plaintiff.

Defendant maintains that this was not the proper reporting procedure; plaintiff should have complained to the Office of Equal Opportunity and Diversity Management ("OEO") before filing the instant suit, as mandated by Chancellor's Regulation A-830. Defs.' Summ. J. Mot. at 21; Frangiose Decl. at Ex. Q, Nov. 7, 2016, ECF No. 37-17. But, it is not clear from the face of the Chancellor's regulation whether plaintiff should have reported the harassment to his principal or to the OEO directly. The policy states that an employee "*may* file complaints of

discrimination, harassment, or retaliation . . . in writing or orally" with the OEO within one year after the event giving rise to the claim occurred.  Frangiose Decl. at Ex. Q, Nov. 7, 2016, ECF No. 37-17, at 4 (emphasis added).  The OEO reporting procedure is not mandatory, and even if it were, a plaintiff need not exhaust every reporting remedy available:

> We reject such a brittle reading of the *Faragher/Ellerth* defense. We do not believe that the Supreme Court, when it fashioned this affirmative defense, intended that victims of sexual harassment, in order to preserve their rights, must go from manager to manager until they find someone who will address their complaints.  There is no requirement that a plaintiff exhaust all possible avenues made available where circumstances warrant the belief that some or all of those avenues would be ineffective or antagonistic.  Considering the courage it takes to complain about what are often humiliating events and the understandable fear of retaliation that exists in many sexual harassment situations, we decline to read the rule so rigidly.  Accordingly, we hold that an employer is not, as a matter of law, entitled to the *Faragher/Ellerth* affirmative defense simply because an employer's sexual harassment policy provides that the plaintiff could have complained to other persons as well as the alleged harasser.  Instead . . . the facts and circumstances of each case must be examined to determine whether, by not pursuing other avenues provided in the employer's sexual harassment policy, the plaintiff unreasonably failed to take advantage of the employer's preventative measures. In some instances, it may be unreasonable for a victim of harassment to complain only to the harasser because, as a realistic and practical matter, there are other channels that are adequately indicated and are accessible and open. But, in other cases, there may be reasons why the plaintiff failed to complain to those other than the harasser, who are listed as available.  And in such cases, a genuine issue of fact may be raised as to whether it was reasonable not to pursue other options.

*Gorzynski*, 596 F.3d at 104–05 (2d Cir. 2010).  Whether plaintiff's complaints were sufficiently reasonable in the circumstances and whether defendant exercised reasonable care to prevent the behavior complained of is a factual issue that is appropriate for a jury decision.

Defendant's explanation that "[e]veryone can be characterized by sex, race, ethnicity or (real or perceived) disability and many bosses are harsh, unjust, and rude" and that "[l]itigants in other actions have alleged much more egregious acts" is insufficient.  Def.'s Summ. J. Mot. at 14, 18-19.  Stray remarks and unjust supervisors are common to many workplaces, and not every

unpleasant workplace is necessarily a hostile, actionable one. *Hammond v. Zurich Am. Ins. Co.*, No. 09-CV-3219, 2010 WL 3236777, at *6 (E.D.N.Y. Aug. 12, 2010). But, by its nature, harassment carried out on the basis of a protected characteristic is a sensitive topic that must be analyzed anew in the context of the facts of each case and general community standards supplied by the jury. The court will not grant summary judgment on the ground that plaintiffs in different cases have suffered far "worse" conduct.

A jury is best-placed to evaluate whether plaintiff was subjected to a hostile work environment. "When assessing a [ ] claim that involves neither an ultimate action of discharge nor a materially adverse change in the terms and conditions of employment, it is important that the assessment be made with a keen sense of workplace realities, of the fact that the chilling effect of particular conduct is context-dependent, and of the fact that a jury is generally best suited to evaluate the impact of [hostile] conduct in light of those realities." *Roberts*, 115 F. Supp. 3d at 370 (internal quotation marks and citation omitted); *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 34 (N.Y. App. Div. 2009).

## VI. Trial

Trial shall begin on May 22, 2017 at 2:00 p.m. in Courtroom 10B South. A jury will be selected by a magistrate judge on the morning of May 22, 2017, at a time set by the magistrate judge.

*In limine* motions will be heard on May 15, 2017 at 11:00 a.m. in Courtroom 10B South.

By May 5, 2017, the parties shall submit to the court proposed full jury charges and verdict sheets, *in limine* motions, and any supporting briefs. They shall exchange and file with the court: (1) lists of pre-marked exhibits proposed for use at trial, together with copies of all exhibits, and any stipulations regarding admissibility and authenticity; (2) lists of proposed

witnesses together with brief summaries of their proposed testimony; and (3) stipulations with respect to all undisputed facts.

Any disputes related to briefing schedules or discovery are respectfully referred to the magistrate judge.

## VII.    Conclusion

Defendant's motion for summary judgment on plaintiff's hostile work environment claim is denied.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: March 2, 2017
        Brooklyn, New York